UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
JOHN J. FIERO & FIERO BROTHERS,      :
INC.,                                :    08 Civ. 1298(VM)
                                     :
                Plaintiffs,          :
_____:    **DECISION AND ORDER**
     -  against  -                   :
                                     :
FINANCIAL INDUSTRY REGULATORY,       :
AUTHORITY, INC.,                     :
                                     :
                Defendant.           :
----------------------------------X
**VICTOR MARRERO, United States District Judge.**

Plaintiffs John J. Fiero ("Fiero") and Fiero Brothers, Inc. ("Fiero Brothers") (collectively the "Fieros") brought this action against defendant Financial Industry Regulatory Authority, Inc. ("FINRA") seeking a judgment declaring that FINRA cannot recover financial penalties that FINRA imposed on the Fieros following a disciplinary proceeding. FINRA counterclaims to collect those same penalties. Now before the Court are cross-motions to dismiss the parties' respective complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## I.   BACKGROUND[1]

---

[1] The facts below are taken from the Fieros' Complaint against FINRA, dated February 8, 2008 ("Compl.")and FINRA's Counterclaim against the Fieros, dated August 4, 2008 ("Countercl."), which the Court accepts as true for the purpose of ruling on the motion to dismiss. See Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 180 (2d Cir. 2008) (citing GICC Capital Corp. v. Tech Fin. Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995)). Because this Court is addressing cross motions to dismiss, it will note any discrepancies in the fact sections and will accept the non-moving parties' filings as true for purposes of each motion to

Fiero Brothers was a member of the National Association of Securities Dealers ("NASD") and a broker-dealer registered with the Securities and Exchange Commission ("SEC"). Fiero was the sole registered representative of Fiero Brothers. The Fieros' membership in NASD and activities in the securities industry subjected them to the regulation and discipline of NASD.

FINRA is a private non-profit Delaware Corporation and a self-regulatory organization ("SRO") registered with the SEC as a national securities association pursuant to the Maloney Act of 1938. See 15 U.S.C. § 78o-3, amending the Securities Exchange Act , 15 U.S.C. § 78a-§ 78jj ("Exchange Act"). NASD changed its corporate name to FINRA on July 30, 2007. Throughout the period of the Fieros' membership, FINRA was still known as NASD.[2]

A.   FINRA'S ROLE AS AN SRO

Because FINRA is an SRO, it straddles the line between a public and a private entity. The D.C. Circuit recently described FINRA's complex role:

> By virtue of its statutory authority, NASD wears two
> institutional hats: it serves as a professional

_____

dismiss. Except where quoted, no further reference to these documents will be made.

[2]   The Court's opinion will refer to the defendant as NASD or FINRA according to the name it had at the time of the actions discussed, which will generally be NASD. The distinction, however, is irrelevant to the merits or the Court's disposition of the case.

association, promoting the interests of its members and it serves as a quasi-governmental agency, with express statutory authority to adjudicate actions against members who are accused of illegal securities practices and to sanction members found to have violated the Exchange Act or Securities and Exchange Commission regulations issued pursuant thereto.

National Ass'n of Securities Dealers v. Security and Exch. Comm'n, 431 F.3d 803, 804 (D.C. Cir. 2005) (internal citations omitted); see also 15 U.S.C. § 78o-3(b)(7).

As part of FINRA's mandate, it has the responsibility to "promulgate and enforce rules governing the conduct of its members." Barbara v. New York Stock Exchange, 99 F.3d 49, 51 (2d Cir. 1996) (citing 15 U.S.C. § 78f(b), 78s(g)) (discussing the role of an SRO).  In fact, federal law prohibits the SEC from approving an SRO until it determines that:

The rules of the association provide that ... its members and persons associated with its members shall be appropriately disciplined for violation of any provision of this chapter, the rules or regulations thereunder, . .. or the rules of the association, by expulsion, suspension, limitation of activities, functions, and operations, fine, censure, being suspended or barred from being associated with a member, or any other fitting sanction.

15 U.S.C. § 78o-3(b)(7).  In exercising these powers, the Exchange Act also requires SROs to "provide a fair procedure for the disciplining of members."  15 U.S.C. § 78o-3(b)(8).  Further, because FINRA is a quasi-governmental agency, federal law subjects FINRA to extensive oversight.  For example, "the SEC has ... the responsibility to approve or reject any rule, practice, policy, or interpretation proposed by an SRO."  DL

-3-

Capital Group, LLC v. Nasdaq Stock Market, Inc., 409 F.3d 93, 95 (2d Cir. 2005); see also 15 U.S.C. § 78s.

NASD's rules are embodied in its Rules and Regulations. NASD disciplinary procedures can be found in Rules 9100-9800 ("NASD Rules").[3]  The NASD Rules require specific procedures for formulating the a complaint, providing service of process, discovery, and the other attributes that epitomize our notion of fair process.  See NASD Rules 9211-9290.  The NASD Rules further allow for appeal of a NASD ruling to the National Adjudicatory Council ("NAC"), see Rule 9311, and discretionary review by the NASD Board, see Rule 9351.  Finally, a member may appeal to the SEC for review of an NAC ruling and may then appeal the SEC's decision to the appropriate federal Court of Appeals.  See 15 U.S.C. § 78s(d)(2), § 78y(a).  If the member appeals an imposed fine to the SEC, and the SEC affirms the fine, the SEC is statutorily authorized to seek enforcement of the fine in federal court.  See 15 U.S.C. § 78u(e).  Even if the member does not request such review, the Exchange Act requires FINRA to report any disciplinary decisions to the SEC and the SEC can review any decision on its own initiative. See 15 U.S.C. § 78s(d)(1),(2).

---

[3] Neither party submitted the relevant NASD Rules from the date of the disciplinary hearings.  Further, upon the change from NASD to FINRA, the NASD rules were removed from FINRA's website.  The Court relied upon the NASD-Manual database on Westlaw for the Rules discussed.

B.   THE ENFORCEMENT ACTION AGAINST THE FIEROS

The controversy in this action began when NASD commenced a disciplinary proceeding against the Fieros on February 6, 1998 for allegedly executing a "bear raid" of short selling in order to manipulate the price of certain securities.   See Department of Enforcement v. Fiero, Complaint No. CAF980002, 2002 WL 31476976, October 28, 2002.   On December 6, 2001, the NASD hearing panel issued a decision concluding that the Fieros had violated § 10(b) of the Exchange Act, SEC Rule 10b-5, and NASD conduct rules.   See id. at 1.   The Fieros appealed this decision to the NAC, which affirmed on October 28, 2002. In addition to barring John Fiero from associating with any NASD member, and expelling Fiero Brothers, Inc. from NASD membership, the NAC affirmed the $1,000,000 fine and $10,809.25 in costs imposed on the Fieros jointly and severally.   The Fieros did not pursue their appeal to the SEC and the NAC decision became final.

C.   THE STATE COURT ACTION

On December 22, 2003, NASD filed a breach of contract action in New York state court seeking to collect the fines and costs imposed on the Fieros in the disciplinary proceeding.   See National Ass'n of Sec. Dealers, Inc. v. Fiero, No. 04 Civ. 102755, 2006 WL 5111058 (N.Y. Sup. Ct. May 11, 2006).   The trial court implicitly rejected the Fieros'

-5-

contentions that NASD lacked the power to collect the fines or that NASD was time barred by the New York state statute of limitations for recovering arbitration awards.   The trial court granted NASD's motion for summary judgment on its contract claim.   The First Department unanimously affirmed. See National Ass'n of Sec. Dealers, Inc. v. Fiero, 827 N.Y.S.2d 4, 5 (App. Div. 1st Dep't 2006).

The Fieros appealed and the New York Court of Appeals vacated the judgment and dismissed FINRA's claim for lack of subject matter jurisdiction.   See Financial Indus. Reg. Auth., Inc. v. Fiero, 882 N.E.2d 879, 882 (N.Y. 2008).   The Court of Appeals concluded that Section 27 of the Exchange Act, 15 U.S.C. § 78aa ("Section 27"), vested exclusive jurisdiction to "enforce a penalty imposed on the Fieros as a result of disciplinary proceedings provided for by the Securities Exchange Act for violations of the Securities Exchange Act and its implementing rules in the federal courts."   Id. at 17. After being dismissed from New York State court, the parties turned to this Court.

## II. <u>Discussion</u>

A. <u>Jurisdiction</u>

    1.   <u>"Arising Under" Jurisdiction</u>

The Fieros seek relief under the Declaratory Judgment Act (the "DJA"), 28 U.S.C. § 2201(a).   The DJA, however, does not itself confer subject matter jurisdiction on federal courts.

Instead, the DJA "merely expands the remedies available in the district courts without expanding their jurisdiction." <u>Duke Power Co. v. Carolina Env't Study Group, Inc.</u>, 438 U.S. 59, 98 (1978) (Rehnquist, J., concurring).  Thus, "there must be an independent basis of jurisdiction before a district court may issue a declaratory judgment." <u>Correspondent Servs. Corp. v. First Equities Corp.</u>, 442 F.3d 767, 769 (2d Cir. 2006).  As an independent basis for jurisdiction, the Fieros assert that this action arises under the laws of the United States.  <u>See</u> 28 U.S.C. § 1331.  FINRA agrees that these claims arise under the laws of the United States.

While both parties agree that federal jurisdiction exists, "it is well settled that lack of federal jurisdiction may be raised for the first time on appeal, even by a party who originally asserted that jurisdiction existed, or by the Court sua sponte." <u>City of Rome v. Verizon Commc'ns, Inc.</u>, 362 F.3d 168, 174 (2d. Cir. 2004) (<u>quoting</u> <u>United States v. Leon</u>, 203 F.3d 162, 164 n. 2 (2d Cir. 2000)).

The parties assert that the claims arise under the Exchange Act and the rules promulgated thereunder.  Section 27 confers <u>exclusive</u> jurisdiction on the federal courts for violations of the Exchange Act:

> The district courts of the United States and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in

> equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder.

15 U.S.C. § 78aa.

As discussed above, while the Exchange Act and the regulations promulgated under it do empower FINRA to operate as an SRO, neither the Exchange Act nor the SEC directly administers the disciplinary proceedings or imposes the fines. Instead, FINRA conducts those activities as a private corporation and binds its members through contract. Therefore, it is the contractual relationship between FINRA and the Fieros that creates FINRA's right to collect, not federal statute. This Court, therefore, must determine whether the dispute underlying the declaratory judgment action, FINRA's claims for breach of contract, arises under the laws of the United States. In undertaking this inquiry, it must be the claim itself, and not any federal defenses that might be raised, which implicate federal questions. See Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908).

Courts have used two tests to determine whether an action presents a federal question. See West 14th St. Commercial Corp. v. 5 W. 14th Owners Corp., 815 F.2d 188, 192 (2d Cir. 1986). First, federal question jurisdiction exists when federal law creates the cause of action. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 8-9 (1983);

-8-

American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916).  The Supreme Court has cautioned that the vast majority of cases falling within the statutory grant of federal question jurisdiction are covered by this test, see Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986), while recognizing that the test "has been rejected as an exclusionary principle," Franchise Tax Bd., 463 U.S. at 9, in that it does not describe which cases are beyond district court jurisdiction.  This test can best be understood as involving an inquiry into whether the right or remedy that plaintiff is asserting is strictly a function of substantive state law, that is, whether the underlying cause of action is created by state law and, therefore, the case falls outside of federal jurisdiction.  If this proposition holds, on looking at the elements of the state cause of action, none will explicitly require application of federal law, although collateral questions or interpretations implicating federal law may also be involved that could affect, even if not necessarily dispose of, the state law action.  For example, if such a case were to go to a jury, the jury would be instructed only on the substantive content of state law that established the rights and remedies for liability upon which the action depends, as well as applicable defenses.

Because FINRA's substantive claim is not created by federal law, subject matter jurisdiction cannot be based upon

the first test.   See Franchise Tax Bd., 463 U.S. at 8-9; American Well Works, 241 U.S. 257, 260 (1916).  FINRA's claims are contractual in nature, and federal law — whether it be preemption, statute of limitations, or lack of statutory and regulatory authority — is primarily implicated in the defenses asserted to the contractual claims.    The second test posits that a case may also arise under federal law when "some substantial, disputed question of federal law is a necessary element" of a state claim in a well-pleaded complaint, and thus an adjudication of the merits of the underlying dispute, and the existence, or not, of a right or remedy asserted, depends on the interpretation or application of federal law. Franchise Tax Bd., 465 U.S. at 13.   This sliver of jurisdiction "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 312 (2005).

As the Supreme Court articulated the inquiry, a case may be said to arise under federal law "where the vindication of a right under state law necessarily turn[s] on some construction of federal law."  Franchise Tax Bd., 463 U.S. at 9 (emphasis added).  However, this statement "must be read

-10-

with caution." Merrell Dow, 478 U.S. at 809 (noting that while the central issue in Franchise Tax Board was the meaning of a federal statute, the Court nevertheless "concluded that federal jurisdiction was lacking" there). "[C]ourts have found that removal to federal court is proper where the state action simply provides the vehicle for 'the vindication of rights and ... relationships created by federal law.'" Donovan v. Rothman, 106 F. Supp. 2d 513, 517 (S.D.N.Y. 2000) (alteration in original) (quoting West 14th St., 815 F.2d at 196).

When undertaking this inquiry, courts first consider whether Congress has created a private right of action for the plaintiff. See Merrell Dow, 478 U.S. at 810-12. In Merrell Dow, a case dealing with the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301-399a, the Court concluded that "the congressional determination that there should be no federal remedy for the violation of [FDCA] is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently substantial to confer federal-question jurisdiction." 478 U.S. at 814. The Merrell Dow Court understood the absence of such a right as evidence that Congress intended state law and state courts to deal with such controversies.

In addition to normal principles of "arising under"

jurisdiction, the parties point to the explicit language of Section 27. The Court need not decide, however, whether FINRA's contractual claim fits within the language of Section 27. The Court of Appeals in this Circuit has already resolved this question. Section 27 "plainly refers to claims created by the Act or by rules promulgated thereunder, but not to claims created by state law." Barbara, 99 F.3d at 55. In Barbara, a former member ("Barbara") of the New York Stock Exchange ("NYSE") brought suit against the NYSE for wrongfully using disciplinary proceedings and damaging his reputation and employment opportunities. After the case was removed to federal court by the NYSE, the Court of Appeals concluded that removal was improper because the federal court lacked jurisdiction. Because Barbara's claims were based on state law causes of action, "the most obvious basis for section 1331 'arising under' jurisdiction — a federal claim — was absent from Barbara's complaint." Id. at 53 (citing American Well Works, 241 U.S. at 260). Further, even though some of Barbara's claims involved violations of NYSE Rules, and his claims for relief may have even been contingent on proving such violations, "'the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction.'" Id. at 54 (quoting Merrell Dow, 478 U.S. at 813). After engaging in the "'selective process which picks the substantial causes out of the web and lays the other

-12-

ones aside,'" <u>Greenblatt v. Delta Plumbing & Heating Corp.</u>, 68 F.3d 561, 570 (2d Cir. 1995) (<u>quoting</u> <u>Merrell Dow</u>, 478 U.S. at 813-14) the Court of Appeals concluded that "Barbara's claims could not have been brought in federal court pursuant to section 1331." <u>Barbara</u>, 99 F.3d at 54.  In making those "'principled, pragmatic distinctions,'" <u>Greenblatt v. Delta Plumbing & Heating Corp.</u>, 68 F.3d at 570 (<u>quoting</u> <u>Merrell Dow</u>, 478 U.S. at 813-14), that separate state claims that arise under the laws of the United States and those that do not, the Court of Appeals was guided by the absence of a private right of action in the Exchange Act.  <u>See</u> <u>Barbara</u>, 99 F.3d at 54. In addition, "'the rules of a securities exchange are contractual in nature,' and are thus interpreted pursuant to ordinary principles of contract law, an area in which the federal courts have no special expertise."  <u>Id.</u> (<u>quoting</u> <u>Merrill Lynch, Pierce, Fenner & Smith Inc. v. Georgiadis</u>, 903 F.2d 109, 113 (2d Cir. 1990)).

Because the breach of contract claim asserted by FINRA is one created by state law, and not one created by federal law, that claim is not embraced by Section 27.

2.   <u>Diversity Jurisdiction</u>

FINRA also urges the Court to find that diversity jurisdiction exists.  <u>See</u> 28 U.S.C. § 1332.  FINRA is a Delaware corporation with its principal place of business in

Washington, D.C.  Fiero Brothers is a New York Corporation.[4]
Fiero is a resident of Florida.[5]  Because the parties are
diverse and the complaint alleges in good faith an amount in
controversy over $75,000, this Court has jurisdiction.  See
id.

B.    LEGAL STANDARD

        In evaluating the sufficiency of the pleadings on a
motion to dismiss pursuant to Rule 12(b)(6), the Court accepts
all factual allegations in the complaint as true and draws all
reasonable inferences in non-movant's favor.  See Chambers v.
Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  To
survive a motion to dismiss, a non-movant "must assert a
cognizable claim and allege facts that, if true, would support
such a claim."  Boddie v. Schnieder, 105 F.3d 857, 860 (2d
Cir. 1997).  Thus, the complaint must set forth enough factual
allegations "to raise a right to relief above the speculative
level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).
The task of a court in ruling on a motion to dismiss is to
"assess the legal feasibility of the complaint, not to assay

---

[3] Fiero Brothers does not allege a principal place of business different
from its state of incorporation, which is New York, and its NASD
registration forms confirm that its principal place of business is in
New York.  (See NASD Form BD, dated Aug. 15, 1990 ("Form BD"), attached
as Ex. B to Defendants' Memorandum of Law in Support of Motion to
Dismiss Complaint, dated Aug. 4, 2008 ("FINRA Mem.").)

[4] Fiero did not allege in filings to this Court his state of residency.
FINRA alleges that Fiero's current domicile is the State of Florida.
His NASD filings from 1990 show residency in New Jersey.  (See NASD Form
U-4, dated Aug. 15, 1990 ("Form U-4"), attached as Ex. A to FINRA Mem.)

the weight of the evidence which might be offered in support thereof." In re Initial Pub. Offering Sec. Litig., 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005). Courts may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings. See Miller v. Lazard, Ltd., 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007) (citing Chambers, 282 F.3d at 152-53).

C.   FINRA'S MOTION TO DISMISS

The Court will first address FINRA's motion to dismiss the Fieros' declaratory judgment action. In ruling on that motion, the Court must determine whether the Fieros have "raise[d] a right to relief above the speculative level" in their request that this Court declare the FINRA fines and costs uncollectible by FINRA through the courts. Twombly, 550 U.S. at 555.

1.   Res Judicata

In the previous state court action brought by FINRA against the Fieros, the New York Court of Appeals concluded that Section 27 deprives state courts of jurisdiction over these collection actions and dismissed the case for lack of subject matter jurisdiction. Financial Indus. Reg. Auth., 882 N.E.2d at 882. For the reasons discussed in this opinion, the Court disagrees and concludes that the Exchange Act does not encompass suits of this kind. The Fieros assert that regardless of this Court's conclusion, the New York Court of

-15-

Appeals' disposition implicitly found FINRA's cause of action preempted, and that the decision is res judicata as to FINRA's state law claim.

A federal court assessing the effect of a state-court judgment looks to the law of the state in which the judgment was entered. See, e.g., Allen v. McCurry, 449 U.S. 90, 99 (1980); Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999). Under New York's "transactional approach" to res judicata principles, claims asserted in a federal action involving the same parties or those in privity are barred if they were raised or could have been raised in a prior state proceeding, arise from the "same transaction or series of transactions" as the previously resolved state court claims, and were adjudicated in the state litigation on the merits. Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir.1997) (internal quotation omitted) (applying New York law). It is clear that "a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect." St. Pierre v. Dyer, 208 F.3d 394, 400 (2d Cir. 2000) (citing Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1188 (2d Cir. 1996); Thompson v. County of Franklin, 15 F.3d 245, 253 (2d Cir. 1994)). Because the Court of Appeals judgment has no res judicata effect, the Fieros have no prospect of relief based on the preclusive effect of the state court action.

-16-

2.   Federal Defenses

a.   Preemption and Regulatory Defenses

The Fieros argue that they are also entitled to relief because the Exchange Act preempts FINRA's contract claims. They argue that the SEC's authority to enforce certain fines and penalties is exclusive and, in the alternative, that FINRA lacks specific regulatory authority to collect fines that were validly imposed.

FINRA relies upon New York State contract law for its right to impose and collect fines and penalties. Neither the Exchange Act nor the regulations promulgated pursuant to it contain any provisions intimating that Congress intended to preclude FINRA from taking enforcement actions like the one it has undertaken against the Fieros.  To the contrary, the Exchange Act's decision to entrust SROs with the responsibility of regulating their members implies that an SRO is authorized to use its powers under state law, including the corporate form and contract, to carry out its mandate.

In addition to their claim of preemption, the Fieros claim that FINRA lacks the authority to collect on the fines it imposes.  This argument is premised on the theory that FINRA needs express regulatory authority to institute court proceedings to collect fines.  The Exchange Act,  however, chose to entrust SROs with the power  to "promulgate and enforce rules governing the conduct of its members." Barbara,

-17-

99 F.3d at 51.   The Exchange Act further chose to use corporations and not regulatory agencies to carry out these functions.  In New York, "[t]he ability to sue is among those rights to which a corporation with active status may avail itself."  St. James Const. Corp. v. Long, 253 A.D.2d 754, 755 (N.Y. App. Div. 2d Dept. 1998).  Both New York law, the law which governs the contract at issue here, and Delaware law, the law which governs the corporate affairs of FINRA, authorize corporations to sue and be sued.  See N.Y. Not-For-Profit Corp. Law § 202(a); Del. Code Ann. tit. 8, § 122(2).

The Court concludes that neither the Exchange Act nor SEC regulations limit FINRA's ability to pursue its contract claim against the Fieros.  Therefore, the Fieros have no possibility of relief based on these statutes and regulations.

b.  Federal Arbitration Act

The Fieros also assert that the NASD proceedings constituted an arbitration within the meaning of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16.  Therefore, they argue, the fine imposed by FINRA is time barred by the FAA's one year limitations period.  See 9 U.S.C. § 9.  This contention is without merit.

The FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  "An agreement

-18-

to arbitrate must be voluntarily made, and the Court decides, based on general principles of domestic contract law, whether the parties agreed to submit the issue of arbitrability to the arbitrators." <u>Sarhank Group v. Oracle Corp</u>., 404 F.3d 657, 661 (2d Cir. 2005) (<u>citing</u> <u>First Options, Inc. v. Kaplan</u>, 514 U.S. 938, 943 (1995)).  The parties concede that to the extent state law governs the contractual relationship between them, the law of New York applies.  The law of New York will not bind a party to arbitration absent "'evidence which affirmatively establishes that the parties expressly agreed to arbitrate their disputes.' The agreement must be clear, explicit and unequivocal and must not depend upon implication or subtlety." <u>Waldron v. Goddess</u>, 61 N.Y.2d 181, 183-84 (N.Y. 1984) (<u>quoting</u> <u>Schubtex, Inc. v Allen Snyder, Inc.</u>, 49 N.Y.2d 1, 6 (1979)) (citations omitted).

The Court finds that the disciplinary proceeding provided for in the underlying contracts is not an arbitration.  First, the NASD proceedings by which the Fieros were disciplined were quasi-prosecutorial, not merely a method of dispute resolution.  In the prototypical arbitration, when a dispute within the scope of the agreement arises, the parties have a mutual right to initiate the process, and to participate in the selection of an impartial arbiter.  Here, the Fieros had no right to institute a similar action against FINRA in a neutral forum, and thus, the process was not one in which

-19-

grievances of either party might be addressed.  Rather, as is the case in any disciplinary or prosecutorial action, the commencement of the proceeding and the designation of the hearing officers and the adjudicator are entirely unilateral steps.  Moreover, financially an arbitration ordinarily results in an award of proven contractual damages, not the one-sided imposition of a punitive fine.  As FINRA points out, this type of non-mutual proceeding is appropriate because of the relationship between the parties:  "FINRA is the regulator, and the Fieros are the regulated entities."  (FINRA Mem. at 14.)  The cases Fieros cite in which proceedings that were not expressly called "arbitrations" but were later determined to be just that, all involve actions in which either party to the proceeding could bring a complaint before the adjudicative body.  See, e.g., Kabia v. Koch, 713 N.Y.S.2d 250 (2000) (deeming the TV program "People's Court" to be an arbitration).  This mutuality characteristic of an arbitration is lacking in the NASD proceedings at issue, which constituted a disciplinary action resulting in a penalty.  Second, the Fieros had access to levels of appellate review, including review by the SEC and the federal Court of Appeals.  See 15 U.S.C. § 78s(d)(1); 15 U.S.C. § 78y.  This review is much broader than that envisioned in the FAA, which mandates that the district court "must" enforce the award unless it is vacated on limited statutory grounds.  See 9 U.S.C. §§ 9-11.

-20-

The Court finds that the FINRA disciplinary action in question was not an arbitration.  Because the disciplinary proceeding and fine imposed were not an arbitration and award under the FAA, the one year limitations period found in the FAA does not apply.

c. <u>28 U.S.C. § 2462</u>

The Fieros also assert that 28 U.S.C. § 2462, the federal catch-all statute of limitations, bars FINRA's collection action.[6]  Because this action is one for breach of contract under state law, and not premised on a federal cause of action, 28 U.S.C. § 2562 does not apply.  Instead, FINRA's claim is governed by the six-year statute of limitations provided by N.Y. C.P.L.R. § 213(2) to govern breach of contract claims.  Because FINRA's counterclaim was filed less than six years after the disciplinary decision became final, it is not time-barred.

3. <u>State Law Defenses</u>

The Fieros assert that New York state law bars FINRA from

---

[5] 28 U.S.C. § 2462 provides in full:

> Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

succeeding in its collection action and that they are therefore entitled to declaratory relief. Because this is a declaratory judgment action, the Fieros are affirmatively asserting what would otherwise be defenses to the FINRA claim. The Fieros essentially assert five defenses: (1) there was no contract or agreement to _pay_ the fines; (2) FINRA is equitably estopped from collecting these fines because it did not pursue collections in the past; (3) FINRA has no actual damages; (4) New York State law does not allow private organizations like FINRA to use the court system to enforce penalties against members; (5) that private disciplinary proceedings cannot be used as evidence in a parallel civil suit. For the reasons discussed below, the Court rejects each of these defenses.

> a.   Agreement to Pay Fines

The Fieros first argue that there is no contract to pay the fines imposed by FINRA. On a motion to dismiss, this Court is "not obliged to accept the allegations of the complaint as to how to construe such documents," but at this stage "should resolve any contractual ambiguities in favor of the plaintiff." Subaru Distrib. Corp. v. Subaru of America, Inc., 425 F.3d 119, 122 (2d Cir. 2005) (citing International Audiotext Network, Inc. v. AT&T Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). The contracts between these parties, however, are not ambiguous.

-22-

The Fieros voluntarily applied for and were accepted into the membership of NASD. The language of the agreements originally signed by the Fieros and the NASD by-laws and Rules are clear and unambiguous. By signing NASD's membership forms, and taking the steps necessary for NASD membership, the Fieros bound themselves to the Rules of NASD. Cf. Kidder, Peabody & Co., Inc. v. Zinsmeyer Trusts P'ship, 41 F.3d 861, 863 (2d Cir. 1994) ("As a member of the NASD, [plaintiff] is bound to adhere to the organization's rules and regulations.") (collecting cases.) Under the heading "The Applicant Must Read the Following Very Carefully," Fiero agreed that:

> I submit to the authority of the jurisdictions and organizations and agree to comply with all provisions, conditions, and covenants of the statutes, constitutions, certifications of incorporation, by-laws and rules and regulations of the jurisdictions and organizations as they are or may be adopted, or amended from time to time. I further agree to be subject to and comply with all requirements, rulings, orders, directives and decisions of, and penalties, prohibitions and limitations imposed by the jurisdictions and organizations, subject to right of appeal or review as provided by law.

(Form U-4, signed by Fiero on Sept. 15, 1990). Similarly, Fiero Brothers signed NASD Form BD, which was an application for membership in NASD. (Form BD, signed by Fiero and notarized Sept. 15, 1990). The Fieros cannot now claim that they did not expect to be bound by the rules of the organization they knowingly and voluntarily joined.

The NASD Rules and by-laws were similarly clear as to the

-23-

costs and consequences of violating federal securities laws and regulations as well as NASD Rules.  NASD by-laws authorized the Board to "impose appropriate sanctions applicable to members, including ... fine[s]" and "impose appropriate sanctions applicable to persons associated with members, including ... fine[s]," for, among other things, "violation by a member or a person associated with a member of ... the Rules of the Association, or the federal securities laws, including the rules and regulations adopted thereunder." (NASD By-laws Article XIII, attached as Ex. Q to Plaintiff's Declaration of Brian D. Graifman In Support of Fieros' Motion to Dismiss Counterclaim and Opposition to FINRA's Motion to Dismiss Complaint, dated Oct. 27, 2008 ("Fieros Mem.").)

      b.   Equitable Estoppel

The Fieros claim that "the NASD's historical policies equitably estop its collection attempt." (Compl. ¶ 28.)  The Fieros claim that because FINRA had never before exercised its contractual right to collect fines from former members it is equitably estopped from doing so now. The doctrine of equitable estoppel can be raised "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." Kosakow v. New Rochelle Radiology Assocs., P.C., 274 F.3d 706, 725 (2d Cir. 2001).

-24-

The Fieros agreed to abide by NASD's rules and to adhere to its disciplinary rulings.  To avoid any unfair surprise, NASD twice notified members that it would be collecting fines and costs imposed during disciplinary proceedings.  In a "Notice To Members" dated April 1990, NASD stated that "[i]t is the intention of the Board of Governors to notify the membership that," in addition to other penalties such as revocation or suspension of licenses, "NASD intends to pursue other available means for collection of fines and costs imposed by its District Committees, the Market Surveillance Committee, and Board of Governors in disciplinary decisions issued on or after July 1, 1990."  (NASD Notice to Members 90-21, dated April 1990 ("Notice to Members 90-21"), attached as Ex. D to FINRA Mem.)  The Fieros filed their applications for membership after this Notice on August 15, 1990.  Similarly, in a "Notice to Members" dated October 1999, NASD again stated that "NASD Regulation generally will require the payment of restitution and disgorgement and will also pursue the collection of any fine in sales practice cases, even if an individual is barred, if: there has been widespread, significant, and identifiable customer harm; or the respondent has retained substantial ill-gotten gains."  (NASD Notice to Members 99-86, dated October 1990 ("Notice to Members 99-86"),

attached as Ex. E to FINRA Mem.)[7]

Thus, there were no actions taken, or not taken, by FINRA that could "work an injustice" should FINRA be allowed to collect the fines and costs to which it is contractually entitled.  Even if FINRA had a "longstanding practice to suspend any fine assessed against an associated person or member firm unless and until said person or firm sought to re-enter the industry," (Fieros Mem. at 33) as the Fieros allege, the change in policy does not rise to the level of working any injustice sufficient to warrant equitable estoppel.  The policy change, to the extent one existed, was well articulated in the Notices to Members 90-21 and 99-86, one of which NASD issued just months before the Fieros applied for membership.

The Fieros contend that these documents were not "SEC approved" and therefore of no force or effect.  The disciplinary proceedings and imposition of fines related to the private contract between Fieros and FINRA, and did not require SEC approval.  The SEC has, however, approved FINRA's right to impose fines on its members.  See FINRA Rule 8310.

---

[6] The second Notice to Members, 99-86, was issued after the NASD enforcement action was initiated.  It therefore could not have informed the Fieros about the change in policy before they took the actions that subjected them to the disciplinary process.  It was issued, however, before the Fieros chose not to pursue an appeal to the SEC.  Therefore, the Fieros' allegations that "there was no expectation by the Fieros that FINRA could enforce the fine as a civil judgment, and for such reason they did not appeal the disciplinary determination to the SEC," (Fieros Mem. at 28) is even more unpersuasive

The Fieros argue that: "there was no expectation by the Fieros that FINRA could enforce the fine as a civil judgment, and for such reason they did not appeal the disciplinary determination to the SEC." (Fieros Mem. at 28.)  However, the Fieros knew that if they had appealed the disciplinary proceeding to the SEC, and the SEC affirmed, the SEC could have collected the fines in federal court.  See 15 U.S.C. § 78u(e).  Equitable estoppel certainly cannot be used to create loopholes in the securities laws.

     c.   <u>FINRA's Damages</u>

The Fieros also argue that the alleged breach of their membership contract with FINRA, i.e. not paying the fines imposed upon them, did not cause damage to FINRA, and that therefore FINRA cannot recover for the breach.  The Fieros are correct that damages are a necessary element of a breach of contract claim under New York law.  See <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996) (applying New York law).  FINRA, however, did suffer damages in the amount they are contractually entitled to recover from the Fieros.  Not only are these monies contractually due to FINRA, but FINRA's effectiveness as an organization would be undercut if members were able to avoid paying contractually agreed penalties meant to serve as deterrents.

     d.   <u>Private Membership Organizations</u>

-27-

The Fieros also contend that they are entitled to declaratory relief because, in New York, "[a] membership association cannot assess its own damages in an unliquidated amount that it determined itself ... and collect them." (Oct. 27 Memo.)   The Fieros misplace their trust in New York corporation law.   While the Court is convinced that New York not-for-profit corporations law does allow corporations to impose and collect reasonable fines, New York law does not govern that issue between the Fieros and FINRA.   Because the power of a corporation over its members is an issue wholly internal to the corporation, it is governed by the law of the state of incorporation, here Delaware.

"New York follows the internal affairs doctrine, which generally requires that 'questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation.'" Pension Comm. of Univ. of Montreal Pension Plan v. Banc of America Sec., LLC, 446 F.Supp.2d 163, 191 (S.D.N.Y. 2006) (quoting Scottish Air Int'l, Inc. v. British Caledonian Group, PLC, 81 F.3d 1224, 1234 (2d Cir. 1996)); see also Winn v. Schafer, 499 F. Supp.2d 390, 393 (S.D.N.Y. 2007) (New York law would apply internal affairs doctrine for breach of fiduciary duty claims); Presbyterian Church of Sudan v. Talisman Energy, Inc., 453 F. Supp.2d 633, 683 (S.D.N.Y. 2006) (New York law would apply

internal affairs doctrine on issues of piercing the corporate veil).  The internal affairs doctrine dictates that Delaware law should control the ability of a corporation to collect fines that it imposes upon its members.  As the Supreme Court explained:

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs — matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders — because otherwise a corporation could be faced with conflicting demands.

Edgar v. MITE Corp., 457 U.S. 624, 645 (1982).  The controversy between the Fieros and FINRA highlights the purpose of the doctrine.  A core function of FINRA is to regulate its members.  Its ability to do so cannot depend on the fortuitous event of where those members choose to transact certain business, nor could FINRA operate effectively if member organizations in Los Angeles could violate rule with impunity while those in New York are subjected to fines.  The internal affairs doctrine recognizes the need of corporations to have consistent legal relationships with directors, shareholders, and members, regardless of where they may be located.

Delaware gives its private membership corporations "wide latitude to enact rules to achieve [its] purposes and to discipline its members."  Capano v. Wilmington Country Club,

No. Civ. A. 18037-NC, 2001 WL 1359254, at *4 (Del. Ch. Nov. 1, 2001).  As the Chancery Court stated:

> The power to discipline members of a non-stock voluntary member organization must be provided for in the charter and bylaws ....  As a general principle, private organizations should be given wide latitude in the disciplinary process.  Moreover, issues of whether rules have been violated and whether a member is guilty of conduct warranting investigation and punishment are 'decisions eminently fit' for the organization to determine.

Haas v. Indian River Volunteer Fire Co., Inc., No. 1785, WL 1336730 (Del. Ch. Aug. 14, 2000) aff'd 768 A.2d 469 (Del. 2001) (table decision).  As regards the matter in question, Delaware law requires only that, for non-stock corporations, "[t]he conditions of membership of such corporations shall ... be stated in the certificate of incorporation or the certificate may provide that the conditions of membership shall be stated in the bylaws." Id. at § 102(a)(4).

NASD's bylaws specifically provided that "[t]he Board is hereby authorized to impose appropriate sanctions applicable to members, including censure, fine, suspension, or expulsion from membership ...."  (NASD By-laws Article XIII.)  NASD was authorized to do so for, among other reasons, "violations by a member or a person associated with a member of any of the terms, conditions, covenants, and provisions of the By-Laws of the NASD, NASD Regulation, Nasdaq, or NASD Dispute Resolution, the Rules of the Association, or the federal securities laws,

-30-

including the rules and regulations adopted thereunder."
(NASD By-laws Article XIII.)  FINRA, therefore, has sufficient
authority under state corporation law to impose penalties on
its members.

New York law similarly recognizes FINRA's right to impose
and collect fines.  To the extent that New York law may have,
at one time, not recognized the power of corporations to
impose penalties, New York's Not-for-Profit Corporations Law
reversed this position.  Section 507 of the Not-for-Profit
Corporations Law states:

> If authorized by its certificate of incorporation or
> by-laws and subject to any limitations stated therein a
> corporation may levy initiation fees, dues and
> assessments on its members, whether or not they are
> voting members, and may impose reasonable fines or other
> penalties upon its members for violations of its rules
> and regulations.

New York Not-for-Profit Corp. Law Ch. 35 § 507(a) ("NFPL §
507(a)").  New York Courts have recognized and allowed private
corporations to use this power.  <u>See</u> <u>Sigma Phi Soc'y, Inc.
(Alpha of New York) v. Rensselaer Fratnernity Managers Ass'n,
Inc.</u>, 494 N.Y.S.2d 532 (App. Div. 3d Dep't 1985).

The Fieros contend that even if FINRA has the power to
impose fines, it does not have power to collect them through
litigation.  The Fieros rely on <u>Merchants' Ladies Garment
Ass'n, Inc. v. Coat House of William M. Schwartz, Inc.</u>, 273
N.Y.S. 317 (N.Y. Mun. Ct. 1934), where the state trial court

held:

> The right or power of a private corporation to impose a
> fine is one thing, and the right to sue thereon or to
> employ judicial process for its collection is quite
> another.  And if there is no remedy provided by statute
> to sue thereon, then its payment, if made at all, must
> necessarily be by the voluntary action of the member."

Id.  First, Delaware law, which controls the dispute between
FINRA and the Fieros, contains no indication that it ever
imposed such a disability on corporations when it came to
collecting debts.  See Del. Code Ann. Tit. 8, § 122(2).
Second, even if the Municipal Court of Manhattan correctly
interpreted New York law in 1934, that decision is not
controlling in this matter in this Court today.  As stated
above, New York amended its corporations law in 1970 to allow
corporations to impose fines and penalties on their members.
See 1970 N.Y. Laws c.847 §20, codified at NFPL § 507(a).  New
York case law now recognizes the right of private corporations
to recover penalties through suit.   See Harbor Hills
Landowners v. Manelski, 318 N.Y.S.2d 793, 797-98 (N.Y. Dist.
Ct. 1970).  In Harbor Hills, the court upheld the award to the
landowners' association of both the maintenance charges the
member had refused to pay and the penalties imposed for
failure to pay.  The court specifically relied on NFPL §
507(a) for this authority.

    Although the Court concludes that state laws of Delaware

-32-

and New York are sufficient to create causes of action that enable FINRA to enforce its contract rights against the Fieros, FINRA is not simply a creation of state law.  FINRA is also a quasi-governmental agency.  <u>See</u> <u>National Ass'n of Sec.</u> <u>Dealers</u>, 431 F.3d at 804.  Congress intended FINRA to use its corporate form to "promulgate and enforce rules governing the conduct of its members."  <u>Barbara</u>, 99 F.3d at 51.  In addition, the SEC is <u>required</u> to ensure that SROs have provisions in place to appropriately punish those who violate securities laws and organizational rules with, among other measures, fines.  <u>See</u> 15 U.S.C. § 78o-3(b)(7). To this end, Congress empowered the SEC to use the federal courts to collect such fines when disciplinary proceedings are appealed to that commission.  <u>See</u> 78u(e).  Congress even took steps to ensure that fines were not imposed arbitrarily or unreasonable.  Federal law required NASD to have extensive procedures in place guaranteeing fair process and guarding against arbitrary results.  <u>See</u> 15 U.S.C. § 78o-3(b)(8) (requiring SROs to "provide a fair procedure for the disciplining of members").  Further, the Fieros had a statutory right (which they chose not to exercise) to appeal the NAC's decision to the SEC and eventually the federal Court of Appeals.  <u>See</u> 15 U.S.C. § 78s(d)(1); 15 U.S.C. § 78y(a).

    Allowing former FINRA members to escape validly imposed

penalties by strategic behavior, e.g. not appealing to the Commission, is inconsistent with the purposes of the Exchange Act.  Similarly, letting recovery of fines depend on the minute variations of state law would be an obstacle to FINRA's mandate.  For these reasons, should Delaware state law fail to empower not-for-profit corporations to sue members to collect fines, FINRA's status as a quasi-governmental agency removes that disability.

> e.   <u>FINRA's Claim is Not a Parallel Civil Suit</u>

As further grounds for declaratory relief, the Fieros argue that the "outcome of a disciplinary proceeding is not meant for use as evidence in a parallel civil case." (Fieros Mem. at 35.)  The Fieros misunderstand FINRA's action.  FINRA is not suing under federal or state law for violations of securities laws, and is certainly not asking the Court to accept the disciplinary proceedings as evidence of the Fieros' violations of state or federal law.  Instead, FINRA is asking this Court to compel the Fieros to pay monies they owe to FINRA under the terms of a valid, enforceable contract. Therefore, FINRA is not attempting to use the NASD disciplinary proceedings as evidence of violations of law, only as evidence of the Fieros' obligation to pay a sum fixed by a procedure contractually agreed to.

D.   <u>THE FIERO'S MOTION TO DISMISS FINRA'S COUNTERCLAIM</u>

-34-

FINRA filed a counterclaim seeking the $1,010,809.25 that it had imposed on the Fieros through disciplinary proceedings plus interest.  The Fieros seeks to dismiss the counterclaim on the same grounds that they seek a declaratory judgment that FINRA cannot collect the fines imposed.

To state a claim for breach of contract under New York law, FINRA must allege (1) the existence of a valid, enforceable agreement; (2) performance of the contract by one party; (3) breach of the contract by the other party; and (4) damages.  See Harsco, 91 F.3d at 348 (applying New York law).

By voluntarily joining NASD, the Fieros agreed to abide by the by-laws and rules of NASD.  (See Form BD; Form U-4.) Further, FINRA has the power, under the law of the state of its incorporation, to penalize its members for violating membership rules.  See Haas, 2000 WL 1336730, at *4.  In both New York and Delaware, the states of the parties' contracting and of FINRA's incorporation, respectively, corporations like FINRA have the power to sue and be sued in court.  See N.Y. Not-For-Profit Corp. Law § 202(a)(2); Del. Code Ann. tit. 8, § 122(2).  It is undisputed that the Fieros were subjected to NASD disciplinary proceedings and were fined, jointly and severally, $1,000,000 with costs of $10,809.25.  It is further undisputed that the Fieros did not pay the fine and costs and that FINRA performed under the parties' membership agreement.

-35-

Finally, the facts are sufficient to show that FINRA was damaged in the amount of $1,010,809.25, plus interest, the sum that it is contractually entitled to collect.

The Court has rejected each of the Fieros' arguments for non-enforcement as discussed above.  The Court has found the Fieros' arguments for non-enforcement insufficient to survive a motion to dismiss, and for the same reasons finds them insufficient to defeat FINRA's counterclaim on a motion to dismiss.

### III. **ORDER**

For the reasons discussed above, it is hereby

**ORDERED** that the motion (Docket No. 6) of defendant Financial Industry Regulatory Authority, Inc. ("FINRA") to dismiss the declaratory judgment action by plaintiffs John J. Fiero and Fiero Brothers, Inc. ("Fieros") is GRANTED; and it is further

**ORDERED** that the motion (Docket No. 14) of the Fieros to dismiss the counterclaim by defendant FINRA is DENIED.

**SO ORDERED:**


Dated:    New York, New York
          2 April 2009


                              VICTOR MARRERO
                                 U.S.D.J.